## Staunton

W. T. May, Individually and Trading as May Construction Company v. Wesley W. Martin.

September 11, 1964.

Record No. 5763.

Present, All the Justices.

*J. Murrell Daniel*, for the plaintiff in error.

*Joseph L. Lyle, Jr.* (*Hickson, Davies & Lyle*, on brief), for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Wesley W. Martin instituted this proceeding on March 8, 1963, by filing a motion for judgment against W. T. May, individually and trading as May Construction Company, alleging that May was indebted to him in the sum of $3,137.00, balance due under two contracts for the construction of two houses for the defendant. On March 15, 1963, May filed a "Response and Counter-claim," in which he denied that he was indebted to Martin in the sum claimed in the motion for judgment, in that Martin had not performed his contracts within the time provided therein. In the counter-claim, he further alleged that Martin was indebted to him in the sum of $2,030.31, representing $1,466.40, interest he, May, had to pay on money borrowed to pay for the houses and their construction, because of delay in the performance of the contracts; and $563.91, paid to subcontractors of Martin, who would not extend credit to the latter. He asked that the $2,030.31 "be borrowed as a set-off against the claim of" Martin.

No response was made by Martin to these pleadings.

The case came on to be heard on May 22, 1963, and on that day May paid into court, pursuant to Code of Virginia, 1950, § 8-237, the sum of $1,106.69, the difference between the claim of Martin and the counter-claim of May.

May, on the same day, filed a motion for a summary judgment on the counter-claim, on the ground that Martin having failed to file a response thereto, judgment thereon should be taken for confessed. The motion was denied, and May duly excepted.

Martin, by leave of court, then filed a response in which he denied the allegations of delay mentioned in the counter-claim, and that the sum paid into court discharged May's indebtedness to him.

The evidence was heard before a jury. Martin conceded that May was entitled to a credit of $563.91 paid by the latter to creditors of Martin. The sole issue was whether May was entitled to credit for $1,466.40, interest paid out by him. Motions to strike, made at the conclusion of plaintiff's evidence and at the conclusion of all the evidence, were overruled. The jury returned a verdict in favor of Martin for the sum of $1,466.40. May moved to set it aside as contrary to the law and the evidence, and because of the admission of improper evidence and misdirection of the jury. The motion was overruled and judgment entered in accordance with the verdict. We granted May this writ of error.

The principal questions are these: Did the court err (1) in refusing to grant May's motion for summary judgment on his counter-claim; (2) in refusing to strike the evidence or to set aside the verdict; (3) in permitting certain witnesses to testify as to their dealings with May; and (4) in giving instructions numbered 4 and 5.

The facts have been stipulated in detail for the purpose of this appeal. Those that are material may be summarized as follows:

In February, 1961, G. S. Medieros, an employee of Lester Brothers, Inc., a manufacturer of "pre-cut" Lesco Homes, met May and agreed to sell to him two houses. One was to cost $6,049.00 and the other $6,400.00. Medieros told May that he would secure a contractor to erect the houses on lots owned by May, and that Lester Brothers would arrange interim financing for the costs of the "Package Homes" and the expense of erecting them. At that time, Medieros also told May that the houses "would be constructed within four months from the date construction began."

Martin had a written agreement with Lester Brothers granting him the privilege of selling or building its homes in a certain described area. It expressly provided that Martin was not to be considered as an agent or employee of Lester Brothers; but that he was, and remained, an independent contractor. May and Martin had never had any business dealings with each other and were strangers.

On April 1, 1961, May, Martin, and Medieros, the agent of Lester Brothers, met on the lots owned by May, upon which the two houses sold by Lester Brothers, were proposed to be erected. May and Martin signed two contracts, wherein Martin agreed to erect the houses, one for $5,346.00 and the other for $5,265.00, furnishing all necessary tools, equipment, labor, and certain other specified materials. Payments were to be made therefor, "one-third upon each final inspection report, marked clear, with a balance being due and payable five days after receipt of the final inspection." No time limit for completion of the construction was contained in either contract.

After the execution of the above contracts, May made an interim financing agreement with Lester Brothers, whereby he was to obtain necessary funds for the purchase of the houses and for the payment of the construction work to be performed by Martin. The financing agreement was set up on a four-months plan with a provision that if there was an extension of the loan beyond four months, May would pay interest on the money borrowed at the rate of 6%

per annum. The two houses were finished about November 15, 1962, and accepted as complete by May. However, as a result of approximately fifteen and one-half months of delay in their completion, May was required to pay interest amounting to $1,466.40 on money borrowed by him. The amount is not in dispute.

Martin said that no oral agreement was made as to the time of completion of the houses; that he commenced erecting them shortly after April 1, 1961; that there was some delay in receiving materials and some caused by rain, but that he completed two-thirds of the work on both houses by mid-June of 1961; and that he had been paid but two installments by May, according to the terms of the contracts, amounting to $7,474.00. He further said that he erected other Lester Homes and he knew that interim financing arrangements therefor were customarily based on the completion of the houses in a four-months period.

He further said that the reason he did not complete the houses sooner was because Lester Brothers kept calling him to work on other jobs. Every time Lester Brothers called him to other work he told May, and "May would merely ask him to get to the work when he could." He found out that if he carried out his contract with May according to its terms, he would lose money on the job; that he then told May to get another contractor to finish the work, and that he would give him a promissory note to cover any extra expenses incurred; and that at no time during the course of the construction of the house did May tell him that he, May, was going to hold him liable for any expenses incurred by reason of delay. Martin admitted that he had requested May to pay certain sums directly to subcontractors because otherwise he, Martin, could not obtain credit from them.

Medieros, who was present when the contracts were signed, said there was no mention at that time as to the period within which the houses would be completed.

C. B. Mills, Jr., a subcontractor of Martin's, testified over the objection of May, that he completed his portion of the work on November 15, 1962; that he got in touch with May, who advised him to send his bills to him and he would pay them; and that May never mentioned to him any claim of damages as a set-off against Martin's contract price.

Several other subcontractors testified, over the objection of May, that they had several conversations with May regarding the completion of and payment for the two houses; but that May never told

them he was claiming any set-off against Martin or that the latter would be entitled to receive any less sum than the contract price.

May testified that Medieros "arranged the entire transaction and introduced him to Martin as a builder-dealer of Lester Brothers," and that Medieros told him that "the houses were to be completed not later than August 1, 1961." May also said that it was further understood and agreed in his discussion of the contracts with Medieros, Martin being present, that "Lester Brothers would advertise, promote, show and help sell the two houses in the first part of July, 1961; and that the houses would be completed at the time of such showing."

On cross-examination, May said that the reason he did not accept Martin's suggestion that he employ another contractor to complete the houses was because he "hired two contractors to look at the job and their prices for completing the contracts would have been far in excess of the original total price agreed to by him and Martin;" and that he repeatedly told Martin that he would hold him personally responsible for any damages caused by the latter's failure to complete the erection of the houses by August 1, 1961.

May said he knew that the subcontractors would not extend credit to Martin and that was the reason he paid them the sums mentioned in his cross-claim. Upon questioning by the court, he said "that the purpose for his counter-claim was not to obtain a judgment against the plaintiff, [Martin] but only to set off the amount claimed against the amount claimed by the plaintiff, in the motion for judgment."

Medieros and two other witnesses, all employees of Lester Brothers, testified that the houses contracted to be built by Martin should have been completed in 120, 90, or 45 to 90 days, assuming that the contracting builder would devote his full working time to the job.

The stipulation further recites that the court, upon refusing to grant May's motion for a summary judgment because Martin had not, within twenty-one days after service of the counter-claim on him, filed a response as required by Rules of Court 3:10, 3:18, 3:19 and 3:20, stated that it "was of the opinion that defendant's alleged counter-claim was actually a set-off and need not be pleaded to; that the plaintiff was entitled to reply pursuant to Code, § 8-238; and that it was in the court's discretion to permit the plaintiff to file the pleading pending."

The court, over the objection of May, gave five instructions numbered 1 to 5. Instruction No. 1 related to the burden placed on Martin to prove his case and the weight to be given the evidence.

Instructions numbered 2 and 3 told the jury that where a contract makes no express provision for the time within which it is to be performed, the law requires only that it be performed within a reasonable time under the circumstances.

Instruction No. 4 reads as follows:

"The Court instructs the jury that in order for the defendant May to hold the plaintiff Martin responsible for expenses incurred during the delay in the construction of the houses, the law requires that he should have taken reasonable steps on his own to minimize the expense incurred. And if the jury believe from a preponderance of the evidence that the defendant May failed to take such reasonable steps, then the plaintiff Martin is not responsible for the expenses to May caused by such failure."

May objected and excepted to this instruction on the ground that it was contrary to the law and not supported by the evidence.

Instruction No. 5 reads as follows:

"The Court instructs the jury that if you believe from a preponderance of the evidence that the defendant W. T. May, either by words or actions, acquiesced in the delay in the construction of the houses, then the defendant may not hold the plaintiff responsible for interest incurred during such acquiescence."

The defendant objected to this instruction on the ground that it was contrary to the law, and calculated to mislead the jury into believing that mere acquiescence amounted to a waiver, and there was no evidence of waiver.

I

May was authorized under § 8-237, Code of Virginia, 1950, to make the tender pleaded, and under § 8-239, 1957 Rep. Vol., to ask that the amount tendered be treated as a set-off. Martin was entitled to reply to the allegations of May's tender, § 8-238, Code of Virginia, Rep. Vol. 1957. Under the provisions of § 8-239, Rep. Vol., 1957, statutory recognition is given to the right of litigants "to set off mutually existing claims and demands in a single action," and, in actions at law in courts of record, allows a defendant to counter-claim "against the plaintiff of cross-claim against another defendant to the extent permitted and in the manner prescribed," by our Rules of Court.

The response of Martin was not filed within twenty-one days after service of the "counter-claim" on him. Rules of Court 3:10,

3:18 (e) and 3:19. However, Rule 3:13 provides, in part, that: "The time allowed for filing pleadings may be extended by the court in its discretion and such extension may be granted though the time fixed has already expired." *Williams* v. *Service Incorporated*, 199 Va. 326, 329, 99 S. E. 2d 648; *Turner* v. *Buick Corporation*, 201 Va. 693, 695, 112 S. E. 2d 911. For cases where the court, in its discretion, refused to permit late filing, see *Cooper* v. *Davis*, 199 Va. 472, 100 S. E. 2d 691; *Levine* v. *Lacy*, 204 Va. 297, 130 S. E. 2d 443.

Here, there has been no claim or showing that May was surprised or prejudiced by the action of the court. In the effort to promote fair play and to obtain a just result, the court offered to grant him a continuance, and the offer was refused. We do not think that, under the circumstances, the court abused its discretion in allowing the delayed filing of Martin's response.

## II

There was conflict in the evidence as to the facts and conditions under which the building contracts were entered into, particularly with reference to the time within which the work was to be performed. The conflict presented a jury question.

## III

The testimony of subcontractors and others, who were in no contractual relation with May, that the latter failed to tell them that he planned to set off against the contract price for the construction of the houses any damages he might suffer by reason of delay in their completion, was immaterial, irrelevant, and inadmissible. Such evidence was calculated to convey the impression that May was under a duty to inform the witnesses of any claim he intended to make against Martin; whereas, May was under no obligation, contractual or otherwise, to advise them of his intended course of action.

## IV

This brings us to the controlling question: Did the court err in granting Instructions 4 and 5? The question must be answered in the affirmative.

Instruction No. 4 is subject to the objection made by May, that it was not supported by any evidence that May failed to take "reasonable steps on his own to minimize the expenses incurred." The only

evidence on this phase of the case is that May did consult two contractors who advised him that it would require more than the original price of the construction to complete the houses. Moreover, there is no evidence as to how, or in what amount, May could have minimized the damages.

Instruction No. 5 was an incorrect statement of the law. It has given to acquiescence the same weight, meaning, and implication as waiver. Acquiescence, that is, the failure to protest or object, is an element of waiver; but does not of itself constitute waiver.

Here May, under the circumstances, had the choice of two courses of action. He could treat the delay as a breach of the contracts and declare the contracts forfeited; or he could permit a delay in the time of performance and claim the damages suffered for the delay.

"Allowing a party to complete his contract is no waiver of a right or claim to damages or loss incurred and actually paid caused by his failure to complete it at the time agreed on." *N. & W. R. R. Co.* v. *Shippers Compress Co.*, 83 Va. 272, 278, 2 S. E. 139.

"A waiver of legal rights will not be implied except upon clear and unmistakable proof of an intention to waive such rights." *Creteau* v. *Phoenix Assurance Co.*, 202 Va. 641, 644, 119 S. E. 2d 336.

"Waiver is the intentional relinquishment of a known right, with both knowledge of its existence and an intention to relinquish it.

\* \* \*

"A waiver of legal rights will not be implied except upon clear and unmistakable proof of an intention to waive such rights. But silence, when there is a duty to speak, may result in the waiver of one's rights." 19 Mich. Jur., Waiver, § 2, pages 534, 535.

"The validity of a waiver requires that it shall be made intentionally and voluntarily. Voluntary choice is of the essence of waiver, \* \* \*." *County of Albemarle* v. *Massey*, 183 Va. 310, 315, 32 S. E. 2d 228; *Wilson* v. *Carpenter*, 91 Va. 183, 21 S. E. 243; *White* v. *American Nat. Life Ins. Co.*, 115 Va. 305, 78 S. E. 582; *Millboro Co.* v. *Augusta Corp.*, 140 Va. 409, 125 S. E. 306; *American Nat. Bank* v. *Ames*, 169 Va. 711, 194 S. E. 784; *Orebaugh* v. *Antonious*, 190 Va. 829, 58 S. E. 2d 873; 92 C. J. S., Waiver, § 1043, pages 1041, 1056; 12 Am. Jur, § 349, page 913.

There is no clear proof that May intentionally and voluntarily chose to waive his rights. In electing to allow Martin to complete the construction of the houses, notwithstanding the delay, May chose a course of action which he was permitted to take. He thereby

waived nothing as to his right to claim damage for the failure of Martin to perform his contracts within a reasonable time under the circumstances. When Martin told May to obtain another contractor to complete the contracts, and that he, Martin, would give a promissory note to cover any extra expense, he apparently held himself liable for such expense.

The judgment of the trial court is reversed, and the case remanded for a new trial not in conflict with the views herein expressed.

*Reversed and remanded.*