COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Beales, O'Brien and Fulton
Argued at Alexandria, Virginia


FORTUNE-JOHNSON, INC., ET AL.

v.      Record No. 1757-23-4

QFS, LLC, F/K/A
 QUIET FLOOR SYSTEMS, LLC

FORTUNE-JOHNSON, INC., ET AL.

v.      Record No. 1772-23-4

ADVANCED CAULKING & WATERPROOFING, INC.

FORTUNE-JOHNSON, INC., ET AL.                               MEMORANDUM OPINION[*] BY
                                                    JUDGE MARY GRACE O'BRIEN
v.      Record No. 1773-23-4                             FEBRUARY 25, 2025

BABCOCK ENTERPRISES, INC., d/b/a
 R & B CONSTRUCTION

FORTUNE-JOHNSON, INC., ET AL.

v.      Record No. 1775-23-4

MILLENNIUM CONSTRUCTION, LLC

FORTUNE-JOHNSON, INC., ET AL.

v.      Record No. 1776-23-4

RPM CONSTRUCTION CORP.


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Louise M. DiMatteo, Judge

Katherine M. Lennon (Jennifer Eaton; Dustin M. Paul; Woods
Rogers Vandeventer Black PLC, on briefs), for appellants.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

Lacey Ullman Conn (Sean C. Workowski; Laurel S. Huerkamp; Randolph Critzer, Jr.; James S. Liskow; Janeen B. Koch; Anna G. Zick; Thomas, Thomas & Hafer LLP; Frith Anderson & Peake, PC; DeCaro, Doran, Siciliano, Gallagher & DeBlasis, LLP; Chadwick, Washington, Moriarty, Elmore & Bunn, P.C.; McGavin, Boyce, Bardot, Thorsen & Katz, PC, on brief), for appellees.

In these consolidated appeals, Fortune-Johnson, Inc.[1] challenges an order sustaining the demurrers of five subcontractors and dismissing all claims for contractual and equitable indemnification. Fortune-Johnson contends the court misconstrued Articles 16 and 18 in the subcontracts; misapplied the anti-indemnification statute of Code § 11-4.1; disregarded ambiguities in the subcontracts' language; and improperly made negligence a prerequisite for equitable indemnification. For the following reasons, we affirm.

## BACKGROUND

Fortune-Johnson was the general contractor for the construction of an apartment building owned by Archstone Parkland Gardens, LLC. Archstone alleged in a suit against Fortune-Johnson that failures with weather-proofing apartment balconies caused damage to other parts of the building and required the removal and reconstruction of almost 200 balconies. Archstone's litigation against Fortune-Johnson, which is still pending in the circuit court,[2] is strictly a breach of contract case; a negligence claim was dismissed.

Fortune-Johnson filed separate actions against each subcontractor, asserting that the subcontracts indemnified Fortune-Johnson against Archstone's claims or, alternatively, that the

---

[1] The other appellant in these cases, Katerra, Inc., acquired Fortune-Johnson after the construction contracts at issue were executed and the project had begun. We refer to the appellants collectively as "Fortune-Johnson."

[2] *Archstone Parkland Gardens, LLC v. Fortune-Johnson, Inc. and Katerra, Inc.*, Case No. CL19003410-00.

subcontractors were liable for equitable indemnification.[3]  The complaint did not attach the subcontracts but relied on Article 16 as the basis of the contractual indemnification claim.

The subcontractors filed a motion craving oyer for Fortune-Johnson to produce and identify the subcontracts underlying the suits.  The subcontractors also demurred, arguing that Article 16 was void under Code § 11-4.1 and that the complaints failed to state a claim for equitable indemnification.

In compliance with the court's order granting the motion craving oyer, Fortune-Johnson filed a notice identifying the subcontract provisions that formed the basis of its claims.  In relevant part, this compliance notice identified not only Article 16 but also Article 18(c).  The complaint had not mentioned Article 18, and Fortune-Johnson did not seek leave to amend.

At a hearing on the demurrers, the subcontractors objected to the court's consideration of Article 18(c) because "there's no allegation in the complaint itself that [Fortune-Johnson is] relying on this."

The court issued an opinion letter finding that, under Code § 11-4.1, Article 16 was void because it required the subcontractors to indemnify Fortune-Johnson for Fortune-Johnson's own negligence.  The court also found that Article 18(c) was a promise to perform and not an actionable promise to indemnify.  Finally, the court dismissed the equitable indemnification claim because equitable indemnification only applies to damages resulting from negligence, and "the negligence case ha[d] been eliminated" from the underlying suit Archstone brought against Fortune-Johnson.

The court sustained the subcontractors' demurrers without leave to amend, and these appeals followed.

---

[3] Fortune-Johnson asserted two other claims not at issue in this appeal: breach of contract for failure to obtain insurance and contribution for any negligence damages awarded to Archstone.

ANALYSIS

A. Standard of Review

"The purpose of a demurrer is to determine whether the pleading and any proper attachments state a cause of action upon which relief can be given." *Young-Allen v. Bank of Am., N.A.*, 298 Va. 462, 467 (2020) (quoting *Steward v. Holland Fam. Props., LLC*, 284 Va. 282, 286 (2012)). "A [circuit] court's decision sustaining a demurrer presents a question of law [that appellate courts] review de novo." *Kalergis v. Comm'r of Highways*, 294 Va. 260, 264 (2017) (first alteration in original) (quoting *Harris v. Kreutzer*, 271 Va. 188, 196 (2006)). Likewise, we review issues of statutory and contract interpretation de novo. *See Ayers v. Brooke Rd., LLC*, 300 Va. 315, 321 (2021) (statutory interpretation); *Va. Fuel Corp. v. Lambert Coal Co.*, 291 Va. 89, 98, 106-07 (2016) (contract interpretation).

B. Contractual Indemnification

Fortune-Johnson argues the court erred in finding that the complaint failed to state a claim for contractual indemnification based on either Article 16 or Article 18(c) of the subcontracts. The court found that Article 16 was void under Code § 11-4.1 and that Article 18(c) was not an actionable indemnification provision.

(i) Article 16 is void and unenforceable under Code § 11-4.1.

Code § 11-4.1 provides that certain indemnification provisions in construction contracts are void as against public policy. Specifically,

> any provision . . . by which the contractor performing such work purports to indemnify or hold harmless another party to the contract against liability for damage arising out of bodily injury to persons or damage to property suffered in the course of performance of the contract, *caused by or resulting solely from the negligence of such other party* or his agents or employees, is against public policy and is void and unenforceable.

- 4 -

Code § 11-4.1 (emphasis added). The Supreme Court has interpreted this statute to "void[] any indemnification provision that reaches damage caused by the negligence of the indemnitee, even if the damage does not result solely from the negligence of the indemnitee." *Uniwest Constr., Inc. v. Amtech Elevator Servs., Inc.*, 280 Va. 428, 442 (2010).[4] In *Uniwest*, a general contractor (Uniwest) sued a subcontractor (Amtech) for contractual indemnification based on a clause that provided as follows: "If any claims . . . be made or asserted, whether or not such claim(s) are based upon the negligence of Uniwest . . . , [Amtech] agrees to indemnify and [hold] harmless Uniwest from any and all such claims . . . ." *Id.* at 441. The Court found that this language was so broad that it indemnified Uniwest for its own negligence and was therefore void as against public policy under Code § 11-4.1. *Id.* at 442.

Thus, an indemnification provision cannot be so broad as to indemnify "the indemnitee from its own negligence." *Id.* To determine whether a provision is overbroad and void, a court must "look to the contract containing the provision, not the circumstances from which the claim for indemnification arose." *Id.* at 441.

Here, the court found that Article 16 purported to indemnify Fortune-Johnson for its own negligence and was therefore void. The relevant language appears in subsections (d) and (i)[5] of Article 16 ("Insurance, Indemnity and Bonding"):

> (d) Subcontractor assumes full liability for any and all damages, death, or injury of any kind to all person(s), whether employees or otherwise, and property arising out of or in any way connected with its Work and shall to the fullest extent permitted by law defend,

---

[4] To reach this conclusion, the Supreme Court interpreted the phrases "caused by" and "resulting solely from" as disjunctive, treating them as separate clauses without either phrase modifying the other. *Id.* Although the Supreme Court, on rehearing, withdrew part of the opinion discussing and ruling on certain insurance issues, it did not withdraw its holding regarding the indemnification clauses at issue or its interpretation of Code § 11-4.1. *See Uniwest Constr., Inc. v. Amtech Elevator Servs.*, 281 Va. 509, 510 (2011).

[5] Articles 16(d) and 16(i) are the same for all subcontracts, except they appear as Articles 16(e) and 16(j) in the subcontract for Millennium Construction, LLC.

indemnify and hold harmless Owner, Contractor, Architect, Engineers and Consultants of each, their respective officers, agents, employees and indemnit[ees], from and against any and all claims, losses, suits, damages, expenses, legal and otherwise, arising out of, resulting from, or in any way connected with the Work, *including to the fullest extent permitted by law, the negligence of any indemnit[ee] hereunder.* If any claim or demand is made against Contractor for any matter enumerated herein, any payment due, or which thereafter becomes due, to Subcontractor, shall be held by Contractor to cover such losses and expenses, including all reasonable attorneys' fees.

. . . .

(i) **Hold Harmless Clause:** The Subcontractor shall indemnify and hold harmless the Contractor and all his agents and employees from and against all claims, damages, losses and expenses including attorney's fees arising out of or resulting from the performance of the Subcontractor's work under this Subcontract providing that any such claim, damage, loss or expenses; (a) is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property including the loss of use resulting [therefrom] and (b) is caused in whole or in part by any negligent act or omission of the Subcontractor or anyone for whose acts as he may be liable, *regardless of whether it is caused in part by a part[y] indemnified hereunder*. In any and all claims against the Contractor or any of his agents or employees by any employee or Subcontractor, anyone directly[] employed by him or anyone for whose acts he may be liable, the indemnification obligations under these paragraphs shall not be limited in any way by any limitation on the amount of type of damages, compensation or benefits payable by or for the Subcontractor under work[er]'s compensation acts, disability benefits acts or other employee benefit acts.

(Emphases added; underline and bold in original).

On de novo review, we find the court correctly determined that Article 16 is void under

Code § 11-4.1. Although Article 16 purports to confer indemnity obligations for the subcontractors'

work, it also impermissibly requires the subcontractors to indemnify Fortune-Johnson for its own

negligence. Article 16 requires indemnification for damages arising from "the negligence of any

indemnit[ee]" (Article 16(d)) and "regardless of whether [the loss] is caused in part by a part[y]

indemnified hereunder" (Article 16(i)). The terms "indemnit[ee] and "part[y] indemnified" refer to

- 6 -

Fortune-Johnson. Therefore, these phrases expressly allow Fortune-Johnson to be indemnified for its own negligence, which is not permitted under Code § 11-4.1.

Despite these phrases, Fortune-Johnson insists that Article 16 is enforceable because certain language in the provision limits its scope. First, Fortune-Johnson argues that the word "Work" in Article 16 refers to subcontractor work and therefore limits each subcontractor's liability to indemnification for its own work. Second, Fortune-Johnson argues that by requiring indemnification "to the fullest extent permitted by law," Article 16 reflects the parties' intent not to violate Code § 11-4.1 and authorizes a court to reform the provision for consistency with public policy.

Fortune-Johnson's arguments are unpersuasive. Even assuming "Work" referred exclusively to a subcontractor's work,[6] Article 16 still requires indemnification regardless of whether the loss was partially caused by the negligence of Fortune-Johnson. Put differently, no matter how "Work" is defined, Article 16 impermissibly reaches damages caused by the negligence of the indemnitee, Fortune-Johnson.

Further, we decline to step in and correct the overbreadth of Article 16. According to Fortune-Johnson, the phrase "to the extent permitted by law" operates as a savings clause, allowing us to strike the void language and enforce what remains. However, neither Virginia law nor the subcontracts themselves authorize courts to "blue pencil" or otherwise rewrite the parties' written agreements. *Cf. Update, Inc. v. Samilow*, 311 F. Supp. 3d 784, 794 (E.D. Va. 2018) (noting that, in

---

[6] We note that only the prime construction contract (between Archstone and Fortune-Johnson) contains a list of defined terms. The prime contract, which is incorporated into the subcontracts, broadly defines "Work" as "all of the labor, equipment, materials and services to be furnished by the Contractor pursuant to the Contract Documents." Contrary to Fortune-Johnson's arguments, therefore, "Work" encompasses more than simply a subcontractor's work. Further, the prime contract separately defines "Subcontractor's Work" to mean only "that portion of the 'Work' to be performed by the [s]ubcontractor under the [s]ubcontract." Considering the definitions in the prime contract, the term "Work" in Article 16 does not clearly limit the indemnification provision to a subcontractor's work.

the context of employment contracts with restrictive covenants, no appellate authority in Virginia allows blue penciling). Instead, we have consistently held that courts "will not rewrite contracts." *1st Stop Health Servs. v. Dep't of Med. Assistance Servs.*, 63 Va. App. 266, 279 (2014) (quoting *Bank of Southside Va. v. Candelario*, 238 Va. 635, 640 (1989)). Moreover, each subcontract contains a severability clause that would authorize a court to strike an entire provision as unenforceable, not language within the provision. The severability clause provides as follows: "Should any provision of this Agreement be determined by a court to be unenforceable, such a termination shall not affect the validity and enforceability of any other section or part hereof." Based on these authorities, we are limited to invalidating the entirety of Article 16 and cannot reform the provision to align with the public policy expressed by the legislature in Code § 11-4.1.

Also unpersuasive is Fortune-Johnson's contention that Article 16 is analogous to a second indemnification provision that the Supreme Court upheld in *Uniwest. See* 280 Va. at 433, 442-43. That second indemnification provision contained the phrase "[t]o the fullest extent permitted by law" and, according to Fortune-Johnson, supports enforcing Article 16 here. However, as Fortune-Johnson acknowledges, that second indemnification provision was not scrutinized for compliance with Code § 11-4.1. *Id.* at 442-43. Instead, the Supreme Court addressed only the question of whether the provision—which appeared in the prime contract between the project owner and the general contractor—flowed down and was incorporated into the subcontracts. *Id.* The Court analyzed only the flow-down language, not whether the second indemnification provision itself violated public policy. *See id.* The Court did not address whether the phrase "to the fullest extent permitted by law" operated as a savings clause. *See id.* We do not interpret *Uniwest* as expressing tacit approval for eliminating overbroad language in Article 16 to preserve its enforceability.

Fortune-Johnson also assigns error to the court's application of Code § 11-4.1 to its "causes of action unrelated to negligence." Fortune-Johnson contends that the statute applies only to indemnification for torts resulting in bodily injury or property damage. According to Fortune-Johnson, because its indemnification claims arise from contractual performance and defective workmanship, not tortious damage to any person or property, Code § 11-4.1 does not apply. Under *Uniwest*, however, courts must construe an indemnification provision based on its language and disregard the facts giving rise to the claim. 280 Va. at 441 (stating that courts must "look to the contract containing the provision, not the circumstances from which the claim for indemnification arose"). Code § 11-4.1 precludes a scenario where a subcontractor must indemnify a contractor for damages arising from the contractor's own negligence. We recognize the scenario is quite different here: the subcontractors are being sued to indemnify the contractor for damages arising from the subcontractors' allegedly defective workmanship and breach of contract to build apartment balconies. *Uniwest*, however, establishes that courts must assess the indemnification provision detached from the circumstances presented and determine whether it is valid. *Id.* Courts cannot find a provision valid for one scenario but invalid for another. That type of analysis and conclusion would effectively rewrite the parties' contract, which Virginia law does not allow. *See 1st Stop Health Servs.*, 63 Va. App. at 279.

As in *Uniwest*, Article 16 required the indemnitors (the subcontractors) to indemnify the indemnitee (the general contractor, Fortune-Johnson) for the indemnitee's own negligence. Article 16 conflicts with public policy and is void under Code § 11-4.1.

(ii) Article 18(c) is not an indemnification provision.

Fortune-Johnson argues that even if Article 16 was invalid, Article 18 ("Warranties and Guarantees") subsection (c) provided a right to contractual indemnification from the subcontractors. Rejecting this argument, the court determined that Article 18(c) was "merely a promise to perform"

and not an actionable indemnification provision. On appeal, Fortune-Johnson contends the court misinterpreted Article 18(c) by ignoring payment promises therein:

> (c) *Subcontractor shall pay* for all changes to the Subcontractor's Work or the Contractor's work resulting from defects in Subcontractor's workmanship or materials, as well as all expenses necessary to replace or repair either the Subcontractor's Work on the Contractor's work, including the [work] damaged or disturbed by making replacements or repairs. *Subcontractor shall further be obligated to pay for and shall reimburse* Contractor for all costs associated with the impact of its defective workmanship on other subcontractors, the Contractor's work or the work of Owner's forces. This obligation is in addition to all other guarantees, warranties and rights contained in the Contract Documents.

(Emphases added).

The subcontractors urge that Fortune-Johnson waived this issue because the complaint's contractual indemnification claim (Count I) relied only on Article 16. Although Fortune-Johnson referenced Article 18(c) in its notice of oyer compliance, it never sought leave to amend the complaint to include Article 18(c) as a basis for recovery. The court's ruling on Article 18(c) was "dicta," the subcontractors contend, and not a matter for appellate review.

However, we do not find the issue waived. Fortune-Johnson not only identified Article 18(c) in its oyer-compliance notice, but it also argued its significance at the demurrer hearing. The court substantively ruled on the issue, finding that Article 18(c) was not an indemnity provision. The subcontractors had notice of the "essential facts and legal claims," *Townes v. Va. State Bd. of Elections*, 299 Va. 34, 51 (2020), and documents responsive to a motion craving oyer "may be used to 'amplify' the facts alleged in a complaint when a court decides whether to sustain or overrule a demurrer," *Hale v. Town of Warrenton*, 293 Va. 366, 366 (2017) (quoting *EMAC, L.L.C. v. County of Hanover*, 291 Va. 13, 21 (2016)). Additionally, although the subcontractors objected to the court's consideration of Article 18(c), they did not assign cross-error to the issue, barring that argument on appeal. *See* Rule 5A:19(b) (requiring an appellee to file assignments of cross-error within 10 days

- 10 -

of an appellant's designation of its assignments of error).  Therefore, even assuming the court erred in allowing Fortune-Johnson essentially to amend its complaint through the oyer-compliance notice, that ruling is now the law of the case.  *See Today Homes, Inc. v. Williams*, 272 Va. 462, 470-72 (2006) (holding that failure to assign cross-error effectively waives an issue and an "unchallenged finding of the trial court is now the law of the case and binding on the parties for purpose of appeal"); *see also Bd. of Supervisors v. Stickley*, 263 Va. 1, 6 (2002).

Turning to the merits, we hold that the court correctly ruled that Article 18(c) was not an actionable indemnification provision but a mere promise to perform.  In reaching that conclusion, the court cited *Hensel Phelps Construction Co. v. Thompson Masonry*, 292 Va. 695 (2016).  That case arose from defective workmanship in the construction of a building at a state university.  *Id.* at 700.  After repairing and replacing the defective work, the university sued and eventually settled with the general contractor, Hensel Phelps.  *Id.* at 701.  Hensel Phelps, in turn, sued the subcontractors for breach of contract.  *Id.*  To avoid the statute of limitations for breach of contract, Hensel Phelps argued that the "substance" of its claim was for indemnification and the cause of action did not accrue until it paid the settlement.  *Id.* at 703-04.

Recognizing that the express "Indemnification" clause in the subcontracts was void under Code § 11-4.1, Hensel Phelps "attempt[ed] to repurpose" other subcontract provisions as indemnification provisions.  *Id.* at 704.  Among the provisions considered was a paragraph labeled "Warranty," providing that "Subcontractor warrants and guarantees the work and materials which he performs or furnishes under this Subcontract and agrees to make good, at his own expense, any defect in materials or workmanship which may occur or develop."  *Id.* at 705.

The Supreme Court found that this warranty provision was not an indemnity obligation.  *Id.* Rather, it was a "performance provision" of the contract.  *Id.*  "[T]he promise to make good for any

defect is merely part of the promise to properly perform; it is not an independent indemnity

provision." *Id.* The Court described what is distinct about an indemnification provision:

> Typically, a contract of indemnity is a bilateral agreement between an
> indemnitor and an indemnitee in which the indemnitor promises to
> reimburse his indemnitee for loss suffered or to [hold] him harmless
> from liability. But the *indemnitor makes no promise to perform* the
> obligation undertaken by his indemnitee.

*Id.* at 705 (emphasis added) (quoting *First Va. Bank-Colonial v. Baker*, 225 Va. 72, 77 (1983)). The

distinction between contractual performance provisions and indemnification provisions is

significant because causes of action to enforce these provisions accrue at different times: an action

for breach of contract accrues at the time of breach, Code § 8.01-230, whereas an indemnification

action accrues when "the indemnitee has paid or discharged the obligation," Code § 8.01-249(5);

*see Hensel Phelps*, 292 Va. at 703-04.

The warranty provision in *Hensel Phelps* did not "offer in the alternative to either perform or

indemnify" but instead constituted a "direct and positive engagement to [perform]." *Id.* at 705

(alteration in original) (quoting *Oriental Co. v. Blades Lumber Co.*, 103 Va. 730, 737 (1905)). To

the extent the warranty provision contemplated any payment, it merely "state[d] that the

subcontractor is responsible for the cost of remedying nonperformance or defective performance."

*Id.* at 706. Significantly, the warranty provision contained no obligation "to indemnify and hold [the

contractor] harmless from all liability arising from the failure to perform." *Id.* The Court noted that

those precise promises existed elsewhere in the subcontract—indeed, in the subcontract's express

indemnification provision, which was void under Code § 11-4.1 (because it indemnified the

indemnitee for its own negligence). *Id.* at 704, 706. The Court declined to graft those promises

from the void indemnification provision into—and enforce them through—the warranty provision.

*Id.* at 705 ("We cannot agree that provisions . . . scattered throughout the contract in other specific

contexts and under other specific subtitles[] were contemplated by the parties as independent

indemnification provisions, particularly when there is a freestanding, albeit ineffectual, indemnification provision in the contract.").

Similarly, here, Fortune-Johnson has sought to repurpose Article 18(c) as an indemnification provision, even though the subcontracts contained a "freestanding, albeit ineffectual, indemnification provision" in Article 16. *Id.* But as the Supreme Court ruled in *Hensel Phelps*, we cannot sift through the subcontracts in search of other language to support an indemnification claim when the express indemnification provision is invalid. *See id.*

Article 18(c) clearly refers to damages arising from the breach of a subcontractor's obligation to perform work under the subcontract; it makes no mention of an additional indemnification obligation. It requires a subcontractor to pay for defective workmanship, including any repair and replacement costs. These are promises "to properly perform" the subcontract, not indemnify Fortune-Johnson. *Id.*[7] Under *Hensel Phelps*, contract provisions that tie to a party's performance and corrective action are mere warranties and are not contemplated by the parties as independent indemnification provisions. *See id.* (stating that an "indemnitor makes no promise to perform the obligation undertaken by his indemnitee" (quoting *First Va. Bank-Colonial*, 225 Va. at 77)). The conclusion that Article 18(c) does not create an additional indemnification right is reinforced by the fact that indemnification is explicitly addressed elsewhere in the subcontract, as in *Hensel Phelps*. *See id.*

Because Article 18(c) is a promise to perform, it cannot support Fortune-Johnson's claim for contractual indemnification.

---

[7] Other subsections in Article 18 reflect that the provision as a whole is a performance provision. In subsection (a), the subcontractor "warrants . . . that all materials and equipment furnished shall be new unless otherwise specified" and the work "shall be of good quality, free from faults and defects and in conformance with the [c]ontract [d]ocuments." In subsection (b), the subcontractor "agrees to promptly make good, without cost to [c]ontractor or [o]wner, any and all defects due to faulty workmanship."

(iii)  The subcontracts are not ambiguous.

Fortune-Johnson next contends that ambiguities in Articles 16 and 18 should have prevented the court from sustaining the demurrers.  Specifically, Fortune-Johnson points to language in Article 16 that indemnifies a contractor for its own negligence (void under Code § 11-4.1) immediately followed by the language "to the extent permitted by law."  According to Fortune-Johnson, the juxtaposition of these phrases makes the breadth of the indemnification obligation ambiguous.  Fortune-Johnson also argues that another ambiguity in Article 16 appears in the subcontractors' promise to indemnify for damages "in any way connected" with the subcontractors' work— language too vague to be void under Code § 11-4.1 without fact-finding to ascertain the parties' intent.

Fortune-Johnson further challenges the court's finding that promises in Article 18 to "pay for" and "reimburse" did not constitute promises to indemnify, stating that "to the extent there is another possible interpretation, the language of Article 18 is at least ambiguous, requiring extrinsic evidence to determine its meaning."

Fortune-Johnson argues that a question about the meaning of language in Article 16 or 18 is a factual question requiring evidence to resolve the parties' intent.  Fortune-Johnson submits that the court erred by "impermissibly resolv[ing] its confusion . . . in favor of the [s]ubcontractors."

Whether a contract is ambiguous presents an issue of law we review de novo.  *See Va. Elec. & Power Co. v. N. Va. Reg'l Park Auth.*, 270 Va. 309, 315 (2005).  "[W]hen the terms of a contract are clear and unambiguous, a court must give them their plain meaning."  *Pocahontas Mining L.L.C. v. Jewell Ridge Coal Corp.*, 263 Va. 169, 173 (2002).  "A contract is not ambiguous simply because the parties to the contract disagree about the meaning of its language."  *Id.*  "Rather, ambiguity arises when its language can be understood in more than one way or refers to two or

more things at once." *Id.* "When determining a contract's plain meaning, the words used are given their usual, ordinary, and popular meaning." *Id*.

The search for the plain meaning of a contract term "does not myopically focus on a word here or a phrase there. Instead, it looks at a word in the context of a sentence, a sentence in the context of a paragraph, and a paragraph in the context of the entire agreement." *Erie Ins. Exch. v. EPC MD 15, LLC*, 297 Va. 21, 28 (2019).

On de novo review, we hold that no ambiguity precluded the court from finding Article 16 void. Article 16 clearly indemnifies a contractor for the contractor's own negligence. The so-called limiting language does not render this language ambiguous, but only raises a question of enforceability. Additionally, the phrase "in any way connected to" is broad but not ambiguous. Article 16 as a whole was clearly intended to be a broad indemnification provision; but it is so broad that it is void under Code § 11-4.1.

Likewise, no ambiguity precluded the court from determining that Article 18 is not an indemnification provision. The words "pay for" and "reimburse" pertain to damages for breach of contract and thus reflect how the subcontractors could perform their warranty obligations. The words do not create an ambiguity about the subcontractors' indemnification obligations, which are housed in a separate, albeit ineffectual, portion of the subcontracts. *See Hensel Phelps*, 292 Va. at 705.

Fortune-Johnson's disagreement with the court's interpretation of Articles 16 and 18 does not mean these provisions are ambiguous as a matter of law. *See Pocahontas Mining*, 263 Va. at 173. Further, no parol evidence would aid in the resolution of these supposedly ambiguous terms. Fortune-Johnson has offered no evidence—certainly no testimony from a witness who executed the subcontracts—that would raise a fact question as to the intent of the parties with respect to Articles 16 and 18. Therefore, no ambiguity precluded the court from sustaining the demurrers.

C. Equitable Indemnification

Finally, Fortune-Johnson argues that even if the subcontracts contain no enforceable indemnification provision, it can still maintain a claim for equitable indemnification. However, Virginia law recognizes a claim for equitable indemnification only when "a party without personal fault[] is nevertheless legally liable for damages caused by the *negligence* of another." *Carr v. Home Ins. Co.*, 250 Va. 427, 429 (1995) (emphasis added). Further, "[a] prerequisite to recovery based on equitable indemnification is the initial *determination* that the negligence of another person caused the damage." *Id.* (emphasis added). "Without that determination, neither the negligent actor nor the innocent party can be held liable for the damages claimed." *Id.*

The Supreme Court reiterated these principles in the 2003 decision of *Pulte Home Corp. v. Parex, Inc.*, 265 Va. 518 (2003),

> We did say in *Carr* that we agreed that "equitable indemnification arises when a party[,] without personal fault, is nevertheless legally liable for damages caused by the negligence of another." But we also said that "[a] prerequisite to recovery based on equitable indemnification is the initial determination that the negligence of another person caused the damage."

*Id.* at 528 (alterations in original) (quoting *Carr*, 250 Va. at 429).

However, the Supreme Court in *Pulte Home* went on to reject an equitable indemnification claim for two reasons: first, "because the claim for indemnification did not arise out of a *contractual relationship*"; and, second, "because there has been no determination that any act or omission of [the defendant] caused the damage [to the property]." *Id.* at 528-29 (emphasis added).

As noted by the circuit court in its opinion letter, Fortune-Johnson "seized on" the first reason in *Pulte Home* to argue that a claim for equitable indemnification can arise where there is a contractual relationship between the parties. But the fact that equitable indemnification can arise from a contractual relationship does not mean that such a claim must arise. Regardless of whether

parties are in a contractual relationship, underlying negligence is still "[a] prerequisite to recovery based on equitable indemnification." *Carr*, 250 Va. at 429.

Fortune-Johnson sought equitable indemnification from the subcontractors based on an underlying lawsuit that the project owner (Archstone) brought against Fortune-Johnson as the general contractor. Although Archstone initially sued Fortune-Johnson for both breach of contract and negligence, the circuit court dismissed the negligence count. An essential element of Fortune-Johnson's equitable indemnification claim against the subcontractors—underlying negligence—is absent. *See id.* Therefore, the court did not err in dismissing that claim.

CONCLUSION

For these reasons, the court did not err in sustaining the subcontractors' demurrers and dismissing Fortune-Johnson's complaint for contractual and equitable indemnification.

*Affirmed.*