PRESENT: Carrico, C.J., Lacy, Hassell, Keenan, Koontz, and
Lemons, JJ., and Stephenson, S.J.

POCAHONTAS MINING LIMITED LIABILITY COMPANY

v.  Record No. 010110

JEWELL RIDGE COAL CORPORATION

                                        OPINION BY
                            SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
                                     January 11, 2002

JEWELL RIDGE COAL CORPORATION

v. Record No. 010411

POCAHONTAS MINING LIMITED LIABILITY COMPANY

                FROM THE CIRCUIT COURT OF BUCHANAN COUNTY
                         Keary R. Williams, Judge

    In these consolidated appeals from the same judgment, we

determine whether the trial court erred in interpreting a

provision of a lease.

                                I

    Pocahontas Mining Limited Liability Company, formerly

Pocahontas Mining Company Limited Partnership, L.L.P.

(Pocahontas), filed a declaratory judgment proceeding against

its lessee, Jewell Ridge Coal Corporation (Jewell Ridge),

seeking to have the trial court declare the meaning of the

following lease provision:

        Upon final termination of this lease, whether on
        October 31, 2001, prior exhaustion of mineable and
        merchantable coal, or upon termination of any
        extensions which Lessee may have made as above
        provided, the premises shall revert to Lessor and
        there shall remain intact upon the premises the

preparation plant with all fixed machinery and fixed equipment necessary for its operation including, without limitation, all outside tracks, power lines, conveyor belts and equipment, and tipples, but not including any moveable equipment above-ground or below-ground and not including any under-ground power lines, substations, conveyor belts or other moveable under-ground equipment and machinery.

Pocahontas alleged that this provision required Jewell Ridge to provide it with an intact and operational preparation plant upon termination of the lease. In its grounds of defense, Jewell Ridge contended that the provision did not require it to leave an operational plant and that Pocahontas "does not actually want" the plant.

Following a bench trial, the court ruled that Jewell Ridge was obligated to restore "to functional capabilities and operational standards" all fixed machinery and fixed equipment at the preparation plant "at a level consistent with health, safety, and environmental laws, rules, and regulations . . . in effect on the last date [Jewell Ridge] commercially operated the preparation plant." The court expressly ruled that the lease provision did not require the preparation plant and its fixed equipment to be "upgraded to current health, safety and environmental laws, rules and regulations."

Pocahontas and Jewell Ridge filed separate appeals. We awarded both appeals.

II

2

On November 1, 1941, the parties entered into a lease for the mining of coal on several thousand acres of land (the 1941 Lease). The initial term of the 1941 Lease was 30 years, and Jewell Ridge was given the right to renew the lease for an additional 30-year term.

In 1969, the parties agreed to amend and extend the lease for another 30 years (the 1969 Amendment). At the time of the 1969 Amendment, there existed on the property a preparation plant, known as Jewell 11. The plant was used to prepare coal for market by separating it from rock and other materials gathered during mining operations. As stated previously, the 1969 Amendment provided that, upon termination of the lease, "the premises shall revert to [Pocahontas] and there shall remain intact upon the premises the preparation plant with all fixed machinery and fixed equipment necessary for its operation."

In 1979, Jewell Ridge closed the Jewell 11 plant because the plant had become obsolete and uneconomical to operate. When the plant last operated, it was capable of processing coal from only one seam, known as the Raven seam. It was incapable of processing coal from other seams available in the area, and almost all of the Raven coal in the vicinity of the plant had been mined. Environmental problems, including water and air

3

pollution from the plant's operation, also contributed to its closure.

When Jewell Ridge closed the plant in 1979, it drained the pumps and disconnected the power. Thereafter, the physical condition of the plant deteriorated, and various parts and pieces of equipment were removed or vandalized. The plant is no longer mechanically operational. Jewell Ridge did not terminate the lease; therefore, the lease expired on October 31, 2001.

III

Jewell Ridge, in its appeal, contends that the lease provision at issue only precluded it from removing the preparation plant and certain of its fixed equipment from the premises at the expiration of the lease. According to Jewell Ridge, the provision did not require it to operate, maintain, or repair the plant, or to leave an operational plant on the premises.

Pocahontas contends, on the other hand, that, by giving the language of the provision its plain meaning, Jewell Ridge was required to leave "an operational plant complete with equipment necessary for its operation." Further, in its appeal, Pocahontas contends that the trial court erred in ruling that the provision did not require that the plant be maintained and upgraded to current health, safety, and environmental laws, rules, and regulations. Pocahontas asserts that this ruling

4

violates public policy and argues that a plant cannot be operated unless it complies with current laws, rules, and regulations.

It is well established that, when the terms of a contract are clear and unambiguous, a court must give them their plain meaning. American Spirit Insurance Co. v. Owens, 261 Va. 270, 275, 541 S.E.2d 553, 555 (2001); Bridgestone/Firestone v. Prince William Square, 250 Va. 402, 407, 463 S.E.2d 661, 664 (1995). A contract is not ambiguous simply because the parties to the contract disagree about the meaning of its language. Dominion Savings Bank v. Costello, 257 Va. 413, 416, 512 S.E.2d 564, 566 (1999). Rather, ambiguity arises when its language can be understood in more than one way or refers to two or more things at once. Westmoreland-LG&E Partners v. Virginia Power, 254 Va. 1, 11, 486 S.E.2d 289, 294 (1997); Doswell Ltd. Partnership v. Virginia Power, 251 Va. 215, 222, 468 S.E.2d 84, 88 (1996). When determining a contract's plain meaning, the words used are given their usual, ordinary, and popular meaning. D.C. McClain, Inc. v. Arlington County, 249 Va. 131, 135, 452 S.E.2d 659, 662 (1995).

We think the language in the subject lease provision is clear and unambiguous. In giving the language its plain meaning, we conclude that the trial court correctly ruled that Jewell Ridge was obligated to leave a preparation plant that is

intact, with all fixed machinery and equipment necessary for its operation left on the premises. The word "intact" is defined as "left complete or entire[,] . . . physically and functionally complete[,] . . . [and] having no relevant component removed or destroyed." Webster's Third New International Dictionary 1173 (1981). We think the term "necessary for [the plant's] operation" plainly means that the fixed machinery and equipment must be functional and capable of being run.

We also agree with the trial court's ruling that, while Jewell Ridge was obligated to leave a functional plant, nothing in the provision at issue required Jewell Ridge to upgrade the plant to meet current health, safety, and environmental laws, rules, and regulations. A "functional plant" is one that will perform in a physical sense, but not necessarily in a legal sense. If Pocahontas had wanted to require Jewell Ridge to leave a preparation plant that complied with current laws, rules, and regulations, it could have expressly provided for such. It did not do so.

Pocahontas contends, however, that such a requirement is implied because a plant cannot be operated unless it complies with existing law. It is significant, however, that the lease did not require Jewell Ridge to operate the plant until the lease expired. If Jewell Ridge could cease operating the plant during the lease term, it would be illogical to require it to

upgrade the plant to meet current law requirements upon final termination of the lease.

A court must interpret a contract as it is written. It cannot make a new and different contract. Chawla v. BurgerBusters, Inc., 255 Va. 616, 620, 499 S.E.2d 829, 831 (1998).

In reaching this conclusion, we reject Pocahontas' assertion that the ruling by the trial court violates public policy. The lease provision at issue contains no language violative of public policy, and the cases cited by Pocahontas do not support its assertion.

## IV

In sum, we hold that the trial court correctly interpreted the lease provision. Upon termination of the lease on October 31, 2001, Jewell Ridge was obligated to leave intact a functional preparation plant. It was not required to upgrade the plant to meet current health, safety, and environmental laws, rules and regulations. In failing to leave a functional plant, Jewell Ridge breached the contract.

Therefore, we will affirm the trial court's judgment with one modification. If Pocahontas institutes an action for breach of contract against Jewell Ridge, any damages for the breach shall be determined as of October 31, 2001, the final

7

termination date of the lease, and not as of 1979, the date operation of the plant ceased.

Accordingly, the trial court's judgment will be modified and affirmed.

<u>Modified and affirmed, as modified</u>.

8