# CIRCUIT COURT OF BUCHANAN COUNTY

Yukon Pocahontas Coal Co. et al.

v.

Consolidation Coal Co. et al.

March 3, 2010

Case No. CL04-91

BY JUDGE MICHAEL L. MOORE

This matter is before the Court on Yukon Pocahontas Coal Company's (Yukon) Motion for Partial Summary Judgment filed on July 14, 2009. Yukon filed a Memorandum in Support of its Motion, to which Consolidated Coal (Consol) filed a Brief in Opposition. Yukon then filed a Reply Memorandum in response to the Brief in Opposition and also filed a Supplemental Reply Memorandum. This matter was argued by counsel on September 8, 2009. Based on a review of the 1961 Lease in question and the legal authority presented, the Court will grant Yukon's Motion for Partial Summary Judgment.

Rule 3:20 of the Rules of the Supreme Court of Virginia allows the Court to grant motions for summary judgment when no material fact is genuinely in dispute. Yukon specifically asks this Court to rule that "Consolidated Coal Company had no legal right to dump or store wastewater from its Buchanan No. 1 Mine facility into areas where Yukon has coal and gas interests in the Beatrice Mine, the VP1 Mine, and/or the VP3 Mine, including the drilling of tunnels or holes connecting the Beatrice Mine with the Buchanan No. 1 Mine and all other means of

injection, pumping, and storage by Consolidated Coal Company." Yukon argues that the Virginia Supreme Court and an Arbitration Panel have both ruled on this water dumping issue.

To determine the rights and authority of Island Creek and, subsequently, Consol, to store water under these facts, the Court must look to the language of the 1961 Mining Lease between Yukon and Island Creek. The terms of a lease, like any contract, must be given their plain meaning by the Court when the terms are clear and unambiguous. *Pocahontas Mining Co. v. Jewel Ridge Coal Corp.*, 263 Va. 169 at 173 (2002). As the Supreme Court stated in *Pocahontas Mining*, "a contract is not ambiguous simply because the parties to the contract disagree about the meaning of its language." *Id.* at 173.

The 1961 Lease between Yukon and Island Creek is virtually identical to the Lease interpreted by the Virginia Supreme Court in *Levisa Coal Co. v. Consolidation Coal Co.*, 276 Va. 44 (2008). The *Levisa* case involved the same issue presented here, that is, did Consol, through Island Creek's permission, have the right to store excess water from its mining operation on the lessor's property. In *Levisa*, the Court held that:

> A lease transferring a coal estate or portion thereof is "the grant of an estate determinable [and, w]hen the coal is all removed, the estate ends for the plain reason that the subject of it has been carried away. Thus the space [the coal] occupied reverts to the grantor by operation of law." Accordingly, we conclude that the right to use tunnels and shafts extended only to the mining operations within the determinable estate, and not to the support of mining operations on other lands, We further hold that "if the coal owner expects more than the right to mine and remove the coal within his estate," he ought to stipulate for it in the deed or lease.

*Levisa* at 51, quoting *Clayborn v. Camilla Red Ash Coal Co.*, 128 Va. 383 (1920).

The *Levisa* Court further cites "the long established view in American law holding that the owner of a mine ... may allow the water therein to flow in natural channels and percolations into an adjoining mine, but he may not, in the absence of an easement or license to do so, discharge [water] by means of artificial drains into such adjoining mine."

*Id*. at pp. 51-52, citing *The Law of Mines and Mining in the United States* 631 (1900).

Consol argues that the ruling in *Levisa* should not apply to Yukon because its chain of title created greater property rights than Levisa possessed. Consol cites p. 16 of the 1961 Lease, which grants the lessee the right "to dump water or refuse on said premises" in order to carry out its mining operations on the leased property. Consol further cites Article Fifteen of the Lease, which grants Island Creek "the right to dump on the demised premises, free of charge, refuse or waste produced or resulting from coal mined by lessee on lands not included in the leased premises. . . ." The language cited in the 1961 Yukon Lease is the exact language used in the Levisa Lease. Consol, however, fails to acknowledge that the paragraph in Article Fifteen granting "the right to dump on the demised premises . . ." begins with the condition, that it is "subject to the approval of the Chief Engineer of Lessors as to the location thereof. . . ." Consol fails to cite this explicit and important provision in the 1961 Lease.

The language of the Lease controls the rights of the parties, This Court is of the opinion that Island Creek did not stipulate for the right to dump wastewater in the Lease. The language cited by Consol grants Island Creek no rights other than those incidental to its coal mining operations on the leased property and no right to use Yukon's mineral estate to support its mining operations on other lands. No approval by a Chief Engineer of Yukon was obtained prior to the dumping of wastewater by Island Creek. Thus, any conditional right allowing Island Creek to dump wastewater from its mining operations on other lands never vested. For these reasons, Island Creek does not have the authority, under this Lease, to allow Consol to store wastewater from other mining operations on or in Yukon's mines.

Consol also claims that its purchase of Plum Creek on December 10, 2004, gave Consol a right of ownership to an undivided one-third interest in the Coal Estate and that, as a co-tenant, it has the right to store water on its own property. Consol further claims that, as a co-tenant, it has the right to consent and ratify water storage on the leased estate, including ratification of water storage relating back to 1993 when the water dumping began. In its brief, Consol cites the "well settled rule" set forth in *Marcuse v. Broad-Grace Arcade Corp*., 164 Va. 553 (1935), that "a ratification relates back to the time when the unauthorized act was done and makes it as effective from that time as though it had been originally authorized. . . ." *Id*. at 569. In citing the *Marcuse* case, however, Consol omits from its argument the exception to the Rule stated by the *Marcuse* Court that ratification cannot occur when the rights of innocent third parties are

affected. One co-tenant cannot waive the rights of another co-tenant. Consol cannot ratify its own wrongful conduct; only Yukon could make such a ratification.

The Motion for Partial Summary Judgment will be granted.