# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Ortiz, Raphael and Senior Judge Annunziata
Argued by videoconference


MICHELE K. HYDE

                                            MEMORANDUM OPINION[*] BY
v.      Record No. 2043-23-4                JUDGE DANIEL E. ORTIZ
                                            SEPTEMBER 16, 2025
MATTHEW J. HOWELLS


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
John M. Tran, Judge

Demian J. McGarry (Curran Moher Weis, P.C., on brief), for
appellant.

Andrew R. Tank (Miles D. Franklin; The Law Offices of Miles D.
Franklin, LLC, on brief), for appellee.


In 2021 Michele Hyde ("wife") and Matthew Howells ("husband") were divorced after nearly two decades of marriage. Although we expect no divorce to be simple, in this case husband's atypical financial circumstances have spurred significant litigation, which is how the matter comes before this Court. Appealing the trial court's modification of child support, wife challenges the court's interpretation of her marital settlement agreement, and several other procedural rulings. Specifically, she contends that the trial court erred by excluding husband's significant "additional income," in the form of stock options, from his gross income for purposes of calculating child support. We agree that the plain language of the agreement includes husband's additional income as part of his gross income for purposes of calculating child support, and therefore reverse.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

Husband and wife married on July 15, 2000. They have three children together, two of which are emancipated. Husband is an employee of Palantir Technologies; in 2021 his salary was $347,400, but his total income exceeded $1.8 million due to the redemption of stock he received as an employment benefit. During the marriage, wife did not work outside the home.

Wife filed for divorce on February 19, 2021, maintaining that she and husband had entered into a marital settlement agreement ("the agreement") on April 1, 2020, which "resolve[d] all custody, support, and equitable distribution issues pending between the parties." The Fairfax County Circuit Court granted the divorce on March 2, 2021, and ratified and incorporated the agreement into its decree.

The relevant provisions of the agreement are as follows. Section 6(a) provides that husband will pay wife 27% of his "gross income" in spousal support. The agreement incorporates Code § 20-108.2's definition of gross income,[2] but Section 6(a) of the agreement notes that "any Additional Income . . . shall <u>not</u> be considered part of Husband's gross income." Section 4(g) states that "Additional Compensation may be in the form of stock options, restricted stock units, or any other device intended to provide husband with income/assets related to the value of his employer or his performance, which may or may not vest over a period of time."

---

[1] On appeal, we take the evidence in the light most favorable to husband, the prevailing party below. *See D'Ambrosio v. D'Ambrosio*, 45 Va. App. 323, 335 (2005).

[2] Code § 20-108.2 states that gross income

> means all income from all sources, and shall include, but not be limited to, income from salaries, wages, commissions, royalties, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits except as listed below, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, veterans' benefits, spousal support, rental income except as listed below, gifts, prizes, or awards.

Section 6(c) lays out the timeline and requirements for recalculating spousal support. It provides that,

> [e]ach year, . . . [o]n or before May 1, the parties shall recalculate Wife's spousal support using the formula above and agree to the new spousal support figure on or before May 15th. . . . If the parties cannot agree on the new spousal support figure, the issue may be litigated on a Motions Day in the appropriate Court and any order shall be retroactive to June 1st.

Although husband's additional income is excluded from spousal support, Section 4(g) requires that 30% "of the net of taxes of any such Additional Compensation when it becomes taxable" to husband be placed in a trust for the health, education, maintenance and support of the children (commonly known as a HEMS trust); Section 6(d) likewise requires that wife receive 25% of the same.

Finally, Section 8 of the agreement governs child support. It provides that

> [t]he parties agree that guideline child support is appropriate. If, as, and when spousal support is recalculated pursuant to Section 6 above, the parties shall likewise re-run the child support guidelines to determine the appropriate figure to begin June 1. Using the current spousal support figures, Husband shall pay to Wife the sum of $2,428.00 per month for the support and maintenance of their minor children . . . .

Husband's additional income and its role in the provisions discussed above is central to this case. Husband receives stock options and restricted stock units ("RSUs") as a benefit of his employment with Palantir.[3] He was granted 40,000 stock options when he was hired by Palantir in 2015, and then another 36,126 stock options in 2016. Husband is taxed on the RSUs when

---

[3] A restricted stock unit is a form of employee compensation that vests to an employee after certain requirements are met, such as length of employment. RSUs are taxed when they vest in accordance with I.R.C. § 83(A), which states that property transferred "in connection with the performance of services" "shall be included in the gross income of the person who performed such services in the first taxable year" in which it vests.

they vest; he generally sells some to pay taxes and retains the remainder, which he can sell whenever he sees fit.

Palantir went public in September 2020, resulting in husband receiving $747,038 in immediately taxable RSUs and stock options. Pursuant to the agreement, husband paid wife $91,298 (25%) and placed $109,557 (30%) in a HEMS trust for the children. In June 2021 when husband and wife were due to recalculate spousal and child support, they disagreed as to whether the RSUs and stock options factored into husband's total gross income for child support under Section 8.

On August 27, 2021, husband filed a motion to recalculate child support, arguing that his receipt of stock options, even if immediately taxable, should not be included in child support calculations until sold. He argued that the court retained jurisdiction over his claim (although more than 21 days had passed since entry of the final divorce decree) because the agreement allowed any disagreement stemming from the annual recalculation of spousal support to be "litigated in a Motions Day hearing." He noted that, while Section 6(a) excluded his additional income from spousal support, 6(d) provided that wife would receive 25% of the additional income. But there was no "parallel exclusion" of additional income from child support in Section 8, even though 4(g) provided that the children would receive 30% of additional income via the HEMS trust. Therefore, he argued, including additional compensation in child support "would result in 'double counting' the RSUs." The trial court, with a different judge presiding, denied husband's motion to recalculate, holding that the agreement did "not provide for any deviation from the Virginia child support guidelines, and so must include each party's income from all sources."

Husband then filed a petition for modification of child support on December 1, 2021, arguing that the additional income he received after Palantir went public constituted a material

change in circumstances. He reiterated his rationale from the motion to recalculate, adding that in 2021 his salary accounted for only 17% of his total gross income and that the parties "never contemplated" that his "compensation would change so drastically such that the amount of Additional Compensation far exceeds his salary." He also argued that the "overall scheme" and plain language of the agreement excluded his additional compensation from child support. Before trial, the parties submitted joint stipulations, which included the stipulation that "Base Monthly Spousal Support paid by Matthew Howells to Michele Hyde under the terms of the MSA for June 1, 2021 to May 31, 2022 was $7,836.55."

The trial court held a one-day trial on husband's petition for modification (again, with a new judge presiding), after which it continued the case for entry of the final order and ordered husband and wife to submit written closing arguments. The day after the trial, the court issued a memorandum opinion styled as a "Supplementing Order." Interpreting "the applicable provisions of the Marital Settlement Agreement," the court held that because child support is calculated in Section 8 "if, as, and when" spousal support is calculated under Section 6, child support "is the same [as spousal support] and that Additional Income is not then added in." Consequently, it concluded that the "plain meaning" of Section 8 is that husband's additional income is "not included in his gross income for the purposes of calculating spousal support." It reasoned that "[a] different interpretation renders meaningless the word 'as', which is expressly separated by commas from 'if' and 'when.'"

In her closing argument, wife first asserted that no material change in circumstances existed because husband knew his RSUs and stock options would vest before the final entry of divorce, and alternatively, even if he did not know, such an influx in assets was foreseeable. She also argued that issue preclusion barred the court from considering husband's interpretation of the agreement because the trial court previously held, in response to husband's motion to

- 5 -

recalculate, that the agreement did not allow for deviation from the child support guideline. Husband reiterated the arguments he made in his motion for recalculation and petition for modification, and asserting that "giving effect to the word 'as' in paragraph 8, makes clear that child support is to be calculated using the same formula as spousal support is calculated, thus excluding [husband's] [a]dditional [c]ompensation from his income in the application of the guidelines."

The court issued its final memorandum opinion in September 2022, granting husband's petition to modify child support. As a preliminary matter, the court found that its September 2021 order denying husband's motion to recalculate child support was "void as because [sic] the [husband's] pleadings did not allege a material change of circumstances pursuant to Va. Code § 20-108. Instead, the motion to recalculate rested on a provision of the agreement that improperly extended the [c]ourt's jurisdiction to address all disputes that arise each year as the parties recalculated support."[4] The court also held that, even if husband could have reasonably foreseen the accelerated vesting of his options, that did "not bar consideration" of his petition.

Analyzing the merits of the petition, the court reiterated its rationale in the "supplementing order," and found that husband's sudden influx of assets constituted a material change in income. The court then discussed at length the "various means of distribution of [a]dditional [c]ompensation" outside of child support, such as the provisions that require husband to distribute 55% of his additional compensation to wife and the children. To that end, the court held that the additional income *wife* receives under Section 6(d) must factor into her gross income for child support. It reasoned that "[r]equiring the [husband] to pay monies when he receives the cash benefits of his stock options and in turn requiring the [wife] to recognize

---

[4] The court also observed that the September order was not a final order because it did not address a separate pending motion from the wife.

- 6 -

that cash payment as part of her gross income for the following year, however, is not inequitable."

The court further rejected the parties' pre-trial stipulation on the amount of child support husband owed between the June 2021 recalculation and trial, stating: "The parties are always free to stipulate to facts and those facts will be recognized unless they are plainly contradicted by the record. The parties are not free to stipulate to legal conclusions and require the [c]ourt to concede to their interpretation of the law."

Finally, the court declined to award attorney fees, finding that: "[e]ach [party] ha[d] taken unreasonable positions and were in breach of their agreement when the [c]ourt had to untangle the procedural morass in which their issues were presented," that the "amount of time needed" to determine respective amounts of billing "would cost the parties more attorney[] fees than are warranted," and finally that "the fees for seeking an award would be disproportionate to the equities."

The court entered a final order on March 17, 2023. Following a motion to reconsider and the court's subsequent disposal of that motion on October 15, 2023, wife timely appealed.

ANALYSIS

On appeal, wife raises several assignments of error, which we have divided into three sections. First, two threshold matters: whether the trial court had jurisdiction to consider husband's petition for modification, and whether it ruled on issues not before it. Second, the merits of the case, namely whether the trial court erred by holding that the plain language of the agreement required husband's additional income be excluded from his gross income when calculating child support. Third, whether the court should have awarded wife attorney fees.

- 7 -

I. Threshold questions

Before turning to the trial court's interpretation of the agreement, we first address two threshold issues.[5] First, we consider whether the September 2021 order precluded the court from modifying child support and interpreting the agreement. And second, we consider whether the trial court improperly ruled on issues that were not before it, including by interpreting the agreement and discussing wife's share of husband's additional income. Because each of these issues concerns the trial court's jurisdiction, we review both de novo. *DiLeonardo v. A. Fanous*, 83 Va. App. 706, 712 (2025). Taking each in turn, we find no error.

A. The September 2021 order did not bar the court from ruling on husband's petition for modification.

Wife first asserts that the September 9, 2021 order denying husband's motion to recalculate child support was a final judgment that the trial court "did not have the authority to disturb." She argues that the order "disposed of the 'entire matter before the court,'" was a ruling on the merits, and that it was final under Rule 1:1(b). We disagree, because Rule 1:1(b) does not impact the court's jurisdiction to modify child support based on a material change of circumstances. Rule 1:1(b) provides, in relevant part, that

> a judgment, order, or degree is final if it disposes of the entire matter before the court, including all claim(s) and all cause(s) of action against all parties, gives all the relief contemplated, and leaves nothing to be done by the court except the ministerial execution of the court's judgment, order, or decree.

---

[5] At oral argument before this Court, wife argued an additional threshold issue, that res judicata barred husband from revisiting the September 2021 order in his petition for modification. Although wife raised the issue in her closing argument before the trial court, because that argument was not encompassed in wife's assignment of error or briefed, we decline to consider it now. *See* Rule 5A:20(c)(1); *Banks v. Commonwealth*, 67 Va. App. 273, 290 (2017) ("[W]e do not consider issues touched upon by the appellant's argument but not encompassed by his assignment of error.").

A child support award is therefore a "final order" within the meaning of Rule 1:1(b) when it disposes of the entire matter before the court. But, under the current version of Code § 20-108, "[o]nce a child support award has been entered, . . . a showing of a material change in circumstances will justify modification of the support award." *Crabtree v. Crabtree*, 17 Va. App. 81, 88 (1993); *see* Code § 20-108. In other words, the court retains jurisdiction over the child support order to the limited extent necessary to adjudicate the remedies provided in § 20-108. Here, husband pleaded a material change in circumstances, and the trial court found that one existed to justify modification. The court thus retained jurisdiction to hear husband's subsequent petition to modify child support even after denying his first motion to recalculate.[6]

B. The trial court did not err by granting relief not specifically prayed for.

Wife next argues that the trial court exceeded its authority by ruling on two issues not encompassed by husband's prayer for relief: first, in its interpretation of the plain language of the agreement, and second, in its discussion of the share of husband's additional income that goes to wife and the HEMS trust.

Courts may grant relief not specifically prayed for under narrow circumstances. "It has long been held that, where a party prays for both special and general relief and no relief may be

---

[6] Wife also assigns error to the trial court's holding that the September 2021 order improperly reserved jurisdiction because the agreement stated that the parties could litigate annual spousal support recalculation disagreements on a "Motions Day." The trial court held that husband's motion to recalculate "rested on a provision under the MSA that improperly extended the Court's jurisdiction to address all disputes that arise each year as the parties recalculated support." Section 6(c) of the agreement reads, in relevant part, "[i]f the parties cannot agree on the new spousal support figure, the issue may be litigated on a Motions Day in the appropriate Court . . . ."

Although wife is correct that the court maintains continuing jurisdiction over a divorce under Code § 20-107.3(K)(4) to "effectuate and enforce" a divorce decree (and by incorporation the agreement), that jurisdiction is not unbounded. Although we struggle to see the prejudicial effect of this ruling to wife, we nevertheless hold that the court did not err in reminding the parties that they could not indefinitely extend its jurisdiction to "any and all disputes" through the agreement. *See Azfall v. Commonwealth*, 273 Va. 226, 281-82 (2007) (holding subject matter jurisdiction cannot be conferred by agreement of the parties).

granted under the special prayer, the court may, under the general prayer, grant any proper relief consistent with the case as stated in the bill." *Johnson v. Buzzard Island Shooting Club, Inc.*, 232 Va. 32, 36 (1986). "However, a general prayer will support relief only for those matters placed in controversy by the pleadings." *Jenkins v. Bay House Assocs., L.P.*, 266 Va. 39, 45 (2003).

Take for example *D'Ambrosio v. D'Ambrosio*, 45 Va. App. 323 (2005). There, the trial court modified a custody decree sua sponte to grant the mother sole discretion over medical decision-making when the parties had previously used competing pediatricians. *Id.* at 333. The father appealed, "arguing that the court lacked authority to modify the decree" when neither party had asked the court for sole medical decision-making authority and that he was not on notice that the issue would be adjudicated. *Id.* at 335. This Court disagreed, noting that, although the mother did not specifically request the right to make unilateral medical decisions, she had "prayed that the court grant any other relief it deemed just." *Id.* at 336. Furthermore, "[t]he motions . . . clearly indicated that the issue . . . was before the court," and both parties had made arguments about the difficulty attendant to two competing pediatricians. *Id.* at 337. We therefore held that, "[b]ecause the relief requested was consistent with the allegations in the petition and the arguments made at trial," and the mother had made a general plea for relief, the father was on notice of the issue and the trial court had the authority to modify the custody decree. *Id.* at 338.

The same circumstances exist here. First, husband asked for general relief in his motion for modification. Second, both issues were briefed and argued before the court. Husband claimed in his opening brief and at oral argument before the trial court, that the agreement could be read to exclude additional income from child support. Wife also noted at trial that the "one question" at issue was "whether or not husband's additional compensation should be considered part of his gross income for calculation of child support." Third, husband put wife's share of his

additional income at issue in his motion for modification, noting that he was "already obligated to pay 55% of his net Additional Compensation (25% as additional spousal support to the Wife and 30% to the children's trust)." Finally, wife also discussed the portion of husband's additional compensation he pays in spousal support and to the HEMS trust at trial and in her closing arguments. Just as in *D'Ambrosio*, wife was on notice that both these issues were before the court. 45 Va. App. at 338. Thus, because the pleadings and argument at trial "clearly indicated" that the issues of interpreting the agreement and wife's share of husband's additional income were before the court, and because husband made a plea for general relief, the trial court did not improperly rule on these issues. *Id.*

\*     \*     \*

In short, because the court had jurisdiction under Code § 20-108 to modify the child support obligations, and the trial court did not improperly rule on issues not before it, wife's threshold challenges fail. We now turn to the merits of the trial court's ruling.

## II. The Merits.

Below, the trial court interpreted the agreement to exclude husband's additional income from child support based on Section 8's provision that child support is recalculated "if, as, and when" spousal support is recalculated. Wife assigns error to the trial court's interpretation, arguing that the plain language of the agreement does not support the trial court's holding.[7] We agree.

---

[7] Wife also argues that because it was "foreseeable" that husband would receive such an influx in additional income, he was estopped from moving to modify. Even if husband's additional income was foreseeable (and we are not persuaded that it was) wife's argument finds no basis in our statutory scheme or case law. Indeed, the cases she cites are founded in Code § 20-109(B) which governs modification of spousal—not child—support. Code § 20-108 has no equivalent limitation. *See Kaplan v. Kaplan*, 21 Va. App. 542, 548-49 (1996) ("[t]he issue of foreseeability of a change in condition . . . has significantly less impact in matters concerning child support" than in spousal support). We therefore decline to import this requirement into § 20-108.

- 11 -

"[A] trial court's interpretation of [a marital agreement] is an issue of law that we review *de novo*." *Cranwell v. Cranwell*, 59 Va. App. 155, 161 (2011) (alterations in original) (quoting *Stacy v. Stacy*, 53 Va. App. 38, 43 (2008) (en banc)). Marital settlement agreements "are subject to the same rules of construction and interpretation applicable to contracts generally." *Fry v. Schwarting*, 4 Va. App. 173, 180 (1987); *see also Tiffany v. Tiffany*, 1 Va. App. 11, 15 (1985). Consequently, they "must be construed to give effect to the intention of the parties, if that intention can be fairly determined from the instrument when read as a whole. . . . [T]he construction adopted should be reasonable, and absurd results are to be avoided." *Transit Cas. Co. v. Hartman's, Inc.*, 218 Va. 703, 708 (1978). Furthermore, "[p]arties are not presumed to have included a provision of no effect," and therefore no word will be "treated as meaningless where it can be given a reasonable meaning." *Ross v. Craw*, 231 Va. 206, 214 (1986). In sum, we must give effect to the parties' entire agreement. *See Hale v. Hale*, 42 Va. App. 27, 31 (2003).

Additionally, "when the terms of a contract are clear and unambiguous, a court must give them their plain meaning." *Pocahontas Mining L.L.C. v. Jewell Ridge Coal Corp.*, 263 Va. 169, 173 (2002). "The fact that one may hypothesize 'opposing interpretations' of the same contractual provision does 'not necessarily render the contract ambiguous' because . . . '[a] contract is not ambiguous simply because the parties . . . disagree about the meaning of its language.'" *Erie Ins. Exch. v. EPC MD 15, LLC*, 297 Va. 21, 29-30 (2019) (second alteration in original) (quoting *Babcock & Wilcox Co. v. Areva NP, Inc.*, 292 Va. 165, 179 (2016)). Moreover, "[t]he search for [the] plain meaning [of a term] does not myopically focus on a word here or a phrase there. Instead, it looks at a word in the context of a sentence, a sentence in the context of a paragraph, and a paragraph in the context of the entire agreement." *Id.* at 28.

Considering the plain meaning of the agreement, the operative question is whether Section 8 incorporates Section 6(a)'s provision excluding husband's additional income from his gross income. Recall that Section 8 states that the

> parties agree that guidelines child support is appropriate. If, as, and when spousal support is recalculated pursuant to Section 6 above, the parties shall likewise re-run the child support guidelines to determine the appropriate figure to begin June 1. Using the current spousal support figures, Husband shall pay to Wife the sum of $2,428 per month for the support and maintenance of their minor children . . . .

Nothing in Section 8 clarifies which portion of "Section 6" this quotation is referencing. For example, Section 6(a) of the agreement provides that spousal support will be based on husband's "gross income," and will exclude husband's additional income, and Section 6(c) provides that the parties will annually recalculate spousal support "[o]n or before May 1" based on tax documents from the prior year.

The trial court held, and husband now argues, that "'if, as, and when' spousal support is recalculated" means that "child support is to be calculated using the same formula as spousal support is calculated, excluding the additional compensation from his income in the application of the guidelines." The court reasoned that "[a] different interpretation renders meaningless the word 'as', which is expressly separated by commas from 'if' and 'when.'"

Conversely, wife argues that the agreement does not provide "any leeway for a deviation to either party's income." She argues that instead, "if, as, and when" means that child support must be recalculated annually by "the same procedure and process to be followed set forth in paragraph 6(c)," not by the *formula* set forth in 6(a).[8] She notes that this interpretation honors

---

[8] Husband even concedes that without the trial court's focus on the word "as," "child support recalculations would only be tied to the conditions of whether spousal support is being recalculated in a given year and when said recalculation actually occurs."

- 13 -

Section 8's requirement that the parties follow "guidelines child support," and its lack of a provision for "annual recalculation."

For several reasons, wife's interpretation of Section 8's plain language is the only logical interpretation. First, courts may look to dictionary definitions to ascertain the "usual, ordinary and popular meaning" of contractual terms. *Clevert v. Jeff W. Soden, Inc.*, 241 Va. 108, 110 (1991); *accord Church Mut. Ins. Co. v. Ephesus Richmond Seventh-Day Adventist Church*, 84 Va. App. 371, 387 (2025). Professor Garner states that "[i]f, as, and when" may be condensed into any "one of the three words," or simply "whenever." Bryan A. Garner, *Garner's Dictionary of Legal Usage* 420 (3d ed. 2011). Thus, Garner endorses the interpretation that "if, as and when" means child support shall be recalculated "whenever" spousal support is. *Id.*[9]

This interpretation also comports with our familiar maxim, *noscitur a sociis*, which requires that "when general and specific words are grouped, the general words are *limited by* the specific and will be construed to embrace only objects *similar in nature* to those things identified by the specific words." *Tomlin v. Commonwealth*, 302 Va. 356, 369 (2023) (quoting *Sainani v. Belmont Glen Homeowners Ass'n*, 297 Va. 714, 724 (2019)). Here, "if" and "when" are more specific, and both are temporal.[10] Applying *noscitur a sociis*, "as" therefore most logically takes on its own temporal definition, of "while" or "when." *As*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/as (last visited Sept. 15, 2025). "If, as, and when" are therefore synonyms, and taken together simply mean "whenever," aligning with Garner's

_____

[9] Notably, Garner also states that "one is ill advised to use the phrase" "if and when" or its "even worse manifestation," "if, as, and when." Garner, *supra*, at 420. Drafting is "almost invariably improved" when this phrase is simplified. *Id.*

[10] Merriam Webster defines "when" as "at what time," or "at or during which time," *When*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/when (last visited Sept. 15, 2025), and "if" as "in the event that," "allowing that," "on the assumption that," or "on the condition that," *If*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/if (last visited Sept. 15, 2025).

definition. This interpretation does not render "as" meaningless, even if it signals pleonastic legal drafting.

Moreover, the only way to give effect to the parties' "entire agreement" is to read "[i]f, as, and when" to mean that child support is recalculated whenever spousal support is recalculated. *Hale*, 42 Va. App. at 31. Husband's interpretation ignores the broader context of Section 8, which provides both that "guidelines child support is appropriate" and that "the parties shall likewise re-run the child support guidelines." These clauses incorporate a complete formula for calculating child support, *see generally* Code § 20-108.2 (setting forth a schedule for "monthly basic child support obligations"), which this Court is "not at liberty to ignore," *Hering v. Hering*, 33 Va. App. 368, 372 (2000).[11] Had the parties intended to exclude husband's additional income from this formula, they could have explicitly done so, as they did in Section 6(a). *See also Pocahontas Mining LLC v. CNX Gas Co.*, 276 Va. 346, 353 (2008) ("[T]he omission of a particular term from a contract is evidence that the parties intended to exclude that term."). We will not now shoehorn a term into this otherwise complete formula.

By contrast, Section 8 does not contain independent guidelines for *when* child support must be recalculated. It does, however, state that "when spousal support is recalculated pursuant to Section 6 . . . the parties shall re-run the child support guidelines." Giving this clause its plain reading, it can only refer to Section 6(c), which lays out the timeline and documentation required to recalculate spousal support. And Section 8's dearth of procedural guidance for recalculation bolsters this interpretation.

---

[11] As wife points out, if "as" meant "calculated by the same formula as spousal support," child support would also be 27% of husband's gross income, rendering the guidelines superfluous. Husband instead attempts to pick and choose pieces of the formula from Section 6(a) to apply to Section 8, which would render much of Section 8 unnecessary and create an absurd result.

In sum, Section 8 of the agreement contains a complete formula for determining child support, and only incorporates Section 6 to the extent that Section 6(c) provides procedural guidelines for annual recalculation.[12]  Any other interpretation incorporating Section 6(a)'s exclusion of husband's additional income is contrary to the terms the parties chose and renders portions of Section 8 meaningless.  Because the trial court's interpretation of the agreement upset the intention of the parties as expressed in the plain language of the agreement, we reverse its order modifying the child support award.[13]

## IV.  Attorney Fees

Finally, wife asks this Court to reverse the lower court's denial of attorney fees "only if she prevails on other assignments of error."  Although we agree with her that the trial court erred in its interpretation of the agreement, we see no abuse of discretion in denying both sides attorney fees.

Attorney fees are "reviewable on appeal only for an abuse of discretion."  *Carter v. Thornhill*, 19 Va. App. 501, 512 (1995) (quoting *Graves v. Graves*, 4 Va. App. 326, 333 (1987)).  Below, the trial court found that the fees required to "untangle the procedural morass . . . would be disproportionate to the equities."  Although wife has now prevailed on her interpretation of the agreement, that issue is but one tangle in a veritable rat's nest of litigation.  For that reason,

---

[12] Wife also assigns error to the trial court's holding that the portion of husband's additional income that she receives should be included in her income for calculating child support if it is excluded from husband's income.  Because the agreement requires husband's additional income to be counted as income for child support calculations, it is therefore not inequitable that any portion of that additional income wife receives is also included in her income for child support.  Therefore, we affirm on this issue.

[13] Wife also argues that the court erred by rejecting the parties' stipulation as to what husband owed in child support prior to trial on his petition for modification.  Because we reverse on the trial court's interpretation of the agreement, we need not reach this issue.  *See Ali v. Commonwealth*, 75 Va. App. 16, 37 n.9 (2022) ("The doctrine of judicial restraint requires that appellate courts decide cases on the best and narrowest ground.").  In this case, the best and narrowest ground is our interpretation of the parties' agreement.

the trial court did not abuse its discretion, and we affirm its denial of wife's request for attorney fees.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed in part, reversed in part, and remanded for recalculation of child support under our interpretation of the agreement.

*Affirmed in part, reversed in part, and remanded.*